**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| Evangeline Remien,<br><br>        Claimant,<br><br>v.<br><br>Carolyn W. Colvin, *in her capacity as Acting Commissioner of the Social Security Administration*,<br><br>        Defendant. | **REPORT AND RECOMMENDATION**<br><br>2:14-cv-00539-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Evangeline Remien filed this action asking the Court[1] to reverse or remand the final agency decision denying her Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), *see* 42 U.S.C. §§ 401–434, 1381-1383f. The Administrative Law Judge ("ALJ") determined that Ms. Remien did not qualify as disabled within the meaning of the Act. (Admin. R. 12, ECF No. 9, certified copy of the tr. of R. of admin. Proceedings: Evangeline Remien [hereinafter Tr. __].) Having carefully considered the parties' memoranda and the complete record in this matter, the undersigned RECOMMENDS the District Court affirm the Commissioner's decision because the Appeal's Council adequately evaluated all relevant evidence; the ALJ discussed Ms. Remien's obesity and its separate and combined impact on Ms. Remien's physical impairments; the ALJ evaluated Ms. Remien's mental impairments, and substantial evidence supports the ALJ's findings that Ms. Remien's impairments do not meet or equal a 12.05 Listing; the ALJ's Residual Functional Capacity ("RFC") included limitations supported by the record; any error

---

[1]On December 5, 2014, Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). (ECF No. 16.)

the ALJ committed in relying on the Vocational Expert ("VE") testimony regarding jobs available to Ms. Remien constituted harmless error; and the ALJ adequately inquired about the consistency of the VE's testimony with the D.O.T.

## PROCEDURAL HISTORY

On March 15, 2011, Ms. Remien filed for DIB and SSI, alleging a disability onset date of May 1, 2008. (Tr. 11.) The Social Security Administration ("SSA") denied Ms. Remien's applications initially on June 27, 2011 and on reconsideration on October 5, 2011. (*Id.*) At Ms. Remien's request, a hearing before an ALJ took place on December 18, 2012 ("the Hearing"). (Tr. 11, 33-76.) On February 8, 2013, the ALJ issued a decision (the "Decision") denying Ms. Remien's claims. (Tr. 11-26.) Ms. Remien requested the Appeals Council review the ALJ's decision. On June 20, 2014, the Appeals Council denied her request for review, (tr. 1-5), making the ALJ's decision the final administrative decision for purposes of judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* 20 C.F.R. §§ 404.981 ("The Appeals Council's decision, or the decision of the [ALJ] if the request for review is denied, is binding unless you or another party file an action in Federal District Court . . . "), 416.1481.

## FACTUAL BACKGROUND

### I. Medical Records

On May 26, 2011, Ms. Remien underwent a Consultative Exam (CE) performed by Mark D. Corgiat, Ph.D., during which, Ms. Remien complained of symptoms of depression and vision problems. (Tr. 298-301.) Ms. Remien reported resigning from her job at Dollar Tree a few months prior and providing childcare for a couple of children out of her home currently. (Tr. 299.) Dr. Corgiat reported Ms. Remien's auditory attention, short-term memory, remote memory, and learning all fell in the normal range. (Tr. 300.) Dr. Corgiat found Ms. Remien had

linear, logical, and goal-directed thought processes.  (Tr. 299.)  Dr. Corgiat diagnosed Ms. Remien with dysthymic disorder and a global assessment of functioning of seventy, and opined that, with proper treatment, Ms. Remien's depression "would likely not be a functional difficulty."  (Tr. 301.)

On May 27, 2011, Ms. Remien underwent a consultative eye examination performed by ophthalmologist Scott C. Richards, M.D.  (Tr. 303-05.)  Ms. Remien has no vision in her left eye.  (Tr. 303.)  Dr. Richards observed that, with correction, Ms. Remien had moderately good visual acuity in her right eye; however, he noted nystagmus (a rapid involuntary movement of the eye), a corneal scar in Ms. Remien's right eye, and some difficulty in seeing fine detail.  (Tr. 303.)  Further, Dr. Richards opined that Ms. Remien had adequate vision for reading normal print, driving, and engaging in most visual assignments.  (*Id.*)

On May 28, 2011, Ms. Remien underwent a consultative physical examination performed by Joseph Fyans, M.D.  (Tr. 307-12.)  Ms. Remien's complaints included left eye blindness, arthritis with foot problems and hypertension.  (Tr. 307.)  Ms. Remien stated she could walk for one hour at a time, sit for an unlimited amount of time, stand for only thirty minutes due to foot pain, and lift up to twenty pounds.  (Tr. 308.)  Ms. Remien denied needing assistance with her activities of daily living.  (*Id.*)  Dr. Fyans observed Ms. Remien had appropriate muscle bulk and tone, full (5/5) strength, normal sensory examination, and normal reflexes.  (Tr. 310.)  Further, Dr. Fyans observed Ms. Remien's unremarkable gait and found her capable of performing all higher-level ambulatory activities.  (Tr. 311.)  Dr. Fyans did not find any symptoms associated with Ms. Remien's joints or hypertension that would impede her ability to work.  (Tr. 311.)

On October 13, 2011, Midtown Clinic treated Ms. Remien for decreased vision in her right eye and hypertension.  (Tr. 419.)  Ms. Remien reported depression and staying in bed all day.  (Tr. 418.)

On October 12, 2012, Ms. Remien re-established care with the Tanner Clinic and sought treatment for joint aches.  (Tr. 393-94.)  Ms. Remien's musculoskeletal exam showed nothing irregular, but she was prescribed Mobic for joint pain anyway.  (Tr. 394.)  The examining physician referred Ms. Remien to a rheumatologist who ordered blood work.  (Tr. 368, 394.)  Ms. Remien's blood work also showed nothing abnormal.  (Tr. 389.)

On October 15, 2012, Ms. Remien sought treatment at the Tanner Clinic for burning in her right eye.  The treating physician found posterior synechia, which is an adhesion of the iris to the cornea but did not conclude this condition caused the burning.  (Tr. 391.)  The doctor recommended artificial tears, glasses, and a follow-up visit in two months.  (*Id*.)

## II. Additional Medical Records Submitted to Appeals Council

Between November 26, 2012 and January 7, 2013, Ms. Remien sought treatment at the Tanner Clinic for a variety of ailments including: abdominal and pelvic pain, right eye surgery to remove synechia, and osteoarthritis of the hands and knees.  (Tr. 424-58.)  Ms. Remien's musculoskeletal examination again showed everything as normal (full range of motion, no joint deformity, heat, swelling, erythema, or effusion).  (Tr. 452.)  Ms. Remien's recommended treatment included physical therapy, exercise, and weight loss.  (Tr. 452-54.)

On July 22, 2013, Ms. Remien underwent psychological testing administered by Lori K. Kotten, Psy.D., to evaluate Ms. Remien's cognitive levels of functioning.  (Tr. 468-71.)  Ms. Remien took the Wechsler Adult Intelligence Scale – 4th Edition (WAIS-IV).  (Tr. 468.)  Ms. Remien's verbal comprehension index score fell in the low range, (tr. 470); however, her

perceptional reasoning, block design, matric reasoning, working memory, digit span, and arithmetic fell in the average or above average range, (tr. 469-70).

### III. Administrative Hearing Testimony

At the hearing, Ms. Remien testified she could stand for one hour if she could lean but only thirty minutes if she could not, (tr. 47), sit for thirty minutes to an hour with only small adjustments, (tr. 46), walk one block in approximately five minutes, (tr. 48), and carry two gallons of milk, (*id*). Ms. Remien testified she drove a car and attended church services. (Tr. 42, 44.)

Ms. Remien testified she started babysitting in 2011 and currently receives $400 a month for babysitting a seventeen-month-old on weekdays from 8:30 A.M. to 3:00 or 3:30 P.M. (Tr. 56-57.) Ms. Remien stated the child walks, and she follows the child around the house. (Tr. 58.) Ms. Remien testified that she experiences no real difficult babysitting. (Tr. 62.)

The VE testified that a person of the same age, with equivalent education and RFC as the ALJ eventually assessed Ms. Remien with could perform the job of call-out operator. (Tr. 69-71.) The VE testified that call-out operator had a reasoning level of three and that a person with a reasoning level of one could not fulfill the duties of a call-out operator. (Tr. 72-73.)

### STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§

405(g), 1383(c)(3).  Adequate, relevant evidence that a reasonable mind might accept to support

a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is

overwhelmingly contradicted by other evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.

1994).[2]  The standard "requires more than a scintilla but less than a preponderance."  *Lax*, 489

F.3d at 1084.  "Evidence is not substantial if it is overwhelmed by other evidence—particularly

certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not

evidence but mere conclusion."  *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (internal

quotations marks and citations omitted).  Moreover, "[a] finding of 'no substantial evidence' will

be found only where there is a conspicuous absence of credible choices or no contrary medical

evidence."  *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks

and citations omitted).

　　　　Although the reviewing court considers "whether the ALJ followed the specific rules of

law that must be followed in weighing particular types of evidence in disability cases," the court

"will not reweigh the evidence or substitute [its] judgment for the Commissioner's."  *Lax*, 489

F.3d at 1084 (internal quotation marks and citations omitted).  The court will "review only the

*sufficiency* of the evidence."  *Oldham v. Astrue,* 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis

in original).  The court does not have to accept the Commissioner's findings mechanically, but

must "examine the record as a whole, including whatever in the record fairly detracts from the

weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the

evidence test has been met."  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal

quotation marks and citation omitted).  "'The possibility of drawing two inconsistent conclusions

from the evidence does not prevent an administrative agency's findings from being supported by

---

[2] Courts apply the same analysis in determining disability under Title II and Title XVI. *See House v. Astrue*, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

substantial evidence,'" and the court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"  *Lax*, 489 F.3d at 1084 (*quoting Zoltanksi v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the Court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*; 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-part sequential evaluation.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-53 (10th Cir. 1988); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The analysis evaluates whether:

   (1)  The claimant presently engages in substantial gainful activity;
   (2)  The claimant has a medically severe physical or mental impairment or impairments;

    (3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

    (4) The impairment prevents the claimant from performing his or her past work; and

    (5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant has the initial burden of establishing the

disability in the first four steps.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five,

the burden shifts to the Commissioner to show that the claimant retains the ability to perform

other work existing in the national economy. *Id.*

      The ALJ evaluated Ms. Remien's claims through step five, making the following findings

of fact and conclusions of law with respect to Ms. Remien:

1. "[Ms. Remien] meets the insured status requirements of the Social Security Act through December 31, 2015."  (Tr. 14.)

2. "[Ms. Remien] has not engaged in substantial gainful activity since May 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971*et seq.*)."  (*Id.*)

3. "[Ms. Remien] has the following severe impairments: blindness of left eye with prosthetic (Exhibit 2F); corneal scar of the right eye and nystagmus of the right eye; and affective/mood disorder with a dysthymic disorder (20 CFR 404.1520 (c) and 416.920(c))."  (*Id.*)

4. "[Ms. Remien] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 15.)

5. "[Ms. Remien] has had the residual functional capacity to perform the full range of sedentary to light unskilled work, but such work could not have required:

   - Lifting more than 16 to 17 pounds at a time on more than an 'occasional basis' (which means from very little up to one-third of the day);
   - Lifting or carrying lighter articles weighing more than 8.5 pounds, on more than an 'occasional' basis;
   - Standing or walking more than 30 minutes at one time, no more than 6 hours total in an 8-hour day;
   - Sitting more than 30 minutes at one time, nor more than 6 hours total in an 8-hour day;
   - Note: regarding standing, walking and sitting, to be as comfortable as possible, [Ms. Remien] requires the option to make brief postural changes every 30 minutes (the

sit/stand option), thus there must be an option to perform work duties while standing/walking or sitting;

- Bending, twisting or squatting;
- Stooping on more than an occasional basis;
- Work on the floor (e.g. kneeling, crawling, or crouching);
- Climbing or descending flights of stairs (but a few steps up or down not precluded);
- Overhead lifting or overhead reaching;
- Working around dangerous unprotected heights, machinery or chemicals due to visual loss;
- Work at more than a low stress level, which means:
  - a low production level (where VE classified SGA jobs as low, average, or high production);
  - no working with the general public;
  - only occasional contact with supervisors and co-workers, but still having the ability to respond appropriately to supervision, co-workers and work situations;
  - the ability to deal with only occasional changes in a routine work setting;
- Work at more than a low concentration level, which means the ability to be alert and attentive to (and to adequately perform) only unskilled work tasks; and,
- Work at more than a low memory level, which means:
  - the ability to understand, remember and carry out 'simple' work instructions (where 'simple' is defined as functioning at GED levels of Reasoning: 3, Math: 2, and Language: 2);
  - the ability to remember and deal with only rare changes in work instructions from week to week; and,
  - the ability to remember and use appropriate judgment in making only simple work-related decisions.
  - binocular vision due to left eye blindness and reduced vision in right eye;
  - reading, writing, computer screen work or similar fine vision tasks;
  - other than a low light environment with option to wear sunglasses or to turn lights down." (Tr. 17-18.)

6. "[Ms. Remien] has no past relevant work (20 CFR 404.1565 and 416.965)." (Tr. 24.)

7. "[Ms. Remien] was born on April 28, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963)." (*Id.*)

8. "[Ms. Remien] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)." (*Id.*)

9. "Transferability of job skills is not an issue because [Ms. Remien] does not have past relevant work (20 CFR 404.1568 and 416.968)." (*Id.*)

10. "Considering [Ms. Remien's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))."  (*Id.*)

11. "[Ms. Remien] has not been under a disability, as defined in the Social Security Act, from May 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))."  (Tr. 25.)

In short, the ALJ concluded Ms. Remien did not possess an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and considering her age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform.

In support of her claim the Court should reverse or remand the Commissioner's decision, Ms. Remien argues the Appeals Council erred in failing to remand the case to allow the ALJ to weigh the new evidence submitted.  (Pl.'s Opening Br. 8, ECF No. 17.)  Further, Ms. Remien argues the ALJ erred by failing to consider all impairments and engage in an adequate obesity analysis; consider listing 12.05 Intellectual Disability equivalence properly; include in the hypothetical moderate limitations on concentration, persistence and pace; properly asses whether a substantial number of jobs Ms. Remien can perform exist in the national economy; ask the VE if her testimony conflicted with the D.O.T. and resolve the inconsistency; give appropriate weight to the activities of daily living ("ADLs"); and consider Ms. Remien's treatment for pain as a positive factor in assessing Ms. Remien's credibility.  (Pl.'s Opening Br. 10-15, ECF No. 17.)

## I. Evaluation of New Evidence Submitted to Appeals Council

Ms. Remien argues the Appeals Council erred in failing to remand the case to allow the ALJ to evaluate the new evidence submitted.  (Pl.'s Opening Br. 7-10, ECF No. 17.)  The undersigned disagrees because the Commissioner considered the new evidence.

The newly submitted evidence includes the results of psychological testing Ms. Remien underwent on July 22, 2103.  (Tr. 468-71.)  The test results indicate Ms. Remien's Verbal Comprehension Index subtest scores fell within the borderline to low average range, (tr. 469), and her Perceptual Reasoning Index and Working Memory Index scores fell within the average range, (tr. 469-70).  Dr. Kotten of the Utah Family Institute assessed Ms. Remien and opined Ms. Remien "may struggle to comprehend most of what is said in the workplace or training environment, especially if she is not given time to process the information from short to long-term memory."  (Tr. 470.)

In its denial of Ms. Remien's request for review, the Appeals Council stated it considered the additional evidence submitted.

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.

> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 1-2.)  The Order of Appeals Council listed the report from the Utah Family Institute dated July 22, 2013.  (Tr. 4.)  The Appeals Council need only state that it considered "the additional evidence identified on the attached Order of the Appeals Council" to defeat the argument that the Appeals Council failed to consider the subsequent submissions adequately.  *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006).  Furthermore, the undersigned does not find that the Utah Family Institute assessment undercuts the ALJ's RFC evaluation.  The ALJ already limited Ms. Remien to work at a low stress level, low concentration level, and low memory level.  (Tr. 17.)  The additional testing does not undercut these findings.

Thus, the undersigned RECOMMENDS the District Court affirm the ALJ's determination because the Appeals Council considered the additional evidence Ms. Remien submitted, and the evidence did not undercut the ALJ's conclusions.

## II. Consideration of Obesity on All Impairments

Ms. Remien argues the ALJ failed to analyze Ms. Remien's obesity adequately because he did not consider her obesity's exacerbating impact on her other impairments.  (Pl.'s Opening Br. 10-11, ECF No. 17.)  Specifically, Ms. Remien claims her RFC, which requires she stand on her arthritic knees for six hours a day, demonstrates the ALJ's failure to account for her obesity. (Pl.'s Reply Br. 3, ECF No. 24.)  The undersigned finds the ALJ adequately acknowledged Ms. Remien's obesity in his decision and its separate and combined impact on her RFC.

Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002), mandates the ALJ consider obesity in the step three analysis and account for obesity when determining plaintiff's RFC.  In his discussion of Ms. Remien's obesity, the ALJ noted SSR 02-1p and acknowledged that "'[o]besity can cause limitation of function,' and '[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity.'"  (Tr. 15 (citing SSR 02-1p).)  With this consideration in mind, the ALJ did not find Ms. Remien's obesity "increased the functional limitations of her other impairments to listing level severity."  (Tr. 15.)  Still, the ALJ accounted for Ms. Remien's limitations due to her obesity by excluding stair climbing, bending, twisting, squatting, etc. from Ms. Remien's RFC.  (*Id.*)

Additionally, the detailed RFC assessment demonstrates the ALJ considered symptoms resulting from the combination of impairments (severe and non-severe) to the extent demonstrated in the record.  (Tr. 17-18.)  Ms. Remien complained of foot and knee pain; however, according to the record, physical examinations of Ms. Remien's joints showed no

swelling, effusion, or redness; she had full range of motion in her joints; she had appropriate muscle bulk and tone, full strength, normal sensory examination and normal reflexes; Ms. Remien had an unremarkable gait; and she could perform all higher-level ambulatory activities. (Tr. 19-20, 311, 340-41, 351.)  Nevertheless, the ALJ limited Ms. Remien to performing only sedentary to light work with the additional limitations for obesity mentioned.  (Tr. 17-18.)

The ALJ acknowledges the Act's standard for disability mandates the ALJ consider the combination of plaintiff's impairments, (tr. 12, 13, 15), and then the ALJ held that Ms. Remien did "not have an impairment or combination of impairments" that met or medically equaled a listing at step three.  (Tr. 15.)

Ms. Remien's argument that the ALJ failed to apply the obesity limitation properly because Ms. Remien's RFC requires she stand on her arthritic knees for six hours a day fails because Ms. Remien misinterprets the RFC.  The RFC states Ms. Remien's work cannot require "[s]tanding or walking more than 30 minutes at one time or more than 6 hours total in an 8 hour day."  (Tr. 17.)  Ms. Remien herself admits she can stand for thirty minutes at a time and an hour at a time if she could lean.  (Tr. 47.)  Because the RFC gives Ms. Remien the ability to change positions from sitting to standing to walking every thirty minutes, it accommodates her obesity.

Thus, the undersigned RECOMMENDS the District Court reject Ms. Remien's argument that the ALJ failed to engage in an obesity analysis and consider its impact on Ms. Remien's other impairments because substantial evidence in the record supports the ALJ's RFC determination.

### III. Listing 12.05 Intellectual Disability Equivalence Evaluation

Ms. Remien argues her impairments meet or equal listing 12.05(D) Intellectual Disability.  (Pl.'s Opening Br. 11-12, ECF No. 17.)  The undersigned finds substantial evidence

within the record supports the ALJ's finding that Ms. Remien does not meet a listing equivalence.

To meet listing 12.05 Intellectual Disability, the claimant must satisfy the criteria in paragraphs A, B, C, or D. 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.05. Paragraph D requires plaintiff's "valid verbal, performance, or Full Scale IQ of 60 through 70" to "result[] in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration."

20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.05(D).

As part of her claim that she meets listing 12.05(D), Ms. Remien argues that no one evaluated the limitations of her lower verbal comprehension ("VCI"). (Pl.'s Reply Br. 4, ECF No. 24.) While the WAIS-IV test results showed Ms. Remien's VCI fell in the "borderline to low average" range, (tr. 469-70), her perceptual reasoning, block design, matric reasoning, working memory, digit span, and arithmetic were average or above average. (*Id.*) Additionally, Ms. Remien's Full Scale IQ fell just below normal at eighty-eight, (tr. 470), but higher than the sixty to seventy range the C.F.R. references for a listing 12.05 equivalence.

Ms. Remien argues that a slightly higher Full Scale IQ does not prevent her from meeting a 12.05 equivalence under POMS DI 24515.056, which states that, even with a slightly higher IQ, the presence of other mental or physical impairments may support an equivalence determination. (Pl.'s Reply Br. 4, ECF No. 24.) However, substantial evidence in the record supports the ALJ's finding that Ms. Remien's other mental or physical impairments do not support a listing 12.05(D) determination. Ms. Remien has a high school education and did not take special education courses. (Tr. 230.) No examining physician opined on Ms. Remien's

inability to get along with others, (*see, e.g.*, tr. 300, 303, 307-11, 329-30, 367, 407-16, 430-33);

Ms. Remien has linear, logical, and goal-directed mental activity, (tr. 299); her expressive speech

fell within normal limits, (*id.*); and her auditory attention, short-term memory, remote memory,

calculation abilities, learning and abstract thinking all qualified as "normal," (tr. 300).

The ALJ also engaged in a listing 12.04 equivalence analysis that supports the

determination that Ms. Remien does not meet listing 12.05(D) because the ALJ found Ms.

Remien has not suffered from at least two of the following: marked restriction of activities of

daily living; marked difficulties in maintaining social functioning; marked difficulties in

maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of

extended duration – the same factors the ALJ would have considered under listing 12.05(D).

(Tr. 15-16.)  The additionally submitted information on verbal comprehension does not

undermine these findings.

The ALJ's listing 12.04 consideration demonstrates Ms. Remien's impairments caused

only "mild restriction[s]" in her activities of daily living.  (*Id.*)  For example, in her adult

function report, Ms. Remien "acknowledged that she cares for herself and others without

reminders or limitations.  She is capable of providing meals and performing light housework."

(Tr. 15.)  Thus, Ms. Remien's own account of her abilities does not show marked restrictions of

activities of daily living.

While Ms. Remien said at the Hearing that she had difficulty being around others, (tr.

65), the adult function report states Ms. Remien "attends family gatherings monthly and church

and sporting events weekly," (tr. 239).  Such activities support the ALJ's finding that Ms.

Remien does not suffer from marked difficulties in maintaining social functioning.  (Tr. 16.)

Furthermore, the ALJ noted that Ms. Remien reported "no difficulty in paying bills, handling a checking account, or counting change." (Tr. 16.) Such activities support the ALJ's finding that Ms. Remien does not experience marked difficulties in maintaining concentration, persistence, or pace.

Finally, the ALJ noted that, according to the medical record, Ms. Remien has not experienced repeated episodes of decompensation for an extended duration. (*Id.*) Consequently, Ms. Remien does not meet the 12.05(D) equivalence requirements as set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.05(D).

Thus, the undersigned RECOMMENDS the District Court reject Ms. Remien's argument that her impairments meet or medically equal listing 12.05(D) Intellectual Disability and find substantial evidence in the record supports the ALJ's and the Appeals Council's findings.

### IV. Evaluation of Hypothetical on Moderate Limitations on Concentration, Persistence, and Pace

Ms. Remien argues the ALJ failed to include moderate limitations in concentration, persistence, and pace in the hypothetical, and thus, incorrectly, found Ms. Remien could perform reasoning level three work. (Pl.'s Opening Br. 12, ECF No. 17; *see also* tr. 16.) Because the ALJ need not include limitation findings at steps two and three in the RFC assessment, and the ALJ accounted for Ms. Remien's mental deficiencies in the RFC assessment by finding Ms. Remien could handle only work demands that required low stress, low concentration, and low memory, the ALJ conducted the proper analysis. (*See* tr. 17 (setting forth the RFC limitations).)

According to the Tenth Circuit, the RFC assessment should include more detailed terms than "moderate" and include more definite work-related limitations. *See Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished). The ALJ's findings at steps two and three "are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4. Likewise, the Tenth Circuit has

consistently held the ALJ need not include limitation findings at step two and step three in the RFC assessment. *See Bales*, 576 F. App'x at 792, 798 (unpublished) ("[W]e conclude that the ALJ's finding of moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment in this case"); *Banks v. Colvin*, 547 F. App'x 899, 903 (10th Cir. 2013) (unpublished) (holding ALJ's finding of "severe" depression at step two not inconsistent with ALJ's later finding of only "mild" depression at step four); *Beasley v. Colvin*, 520 F. App'x 748, 754 & n.3 (10th Cir. 2013) (unpublished) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis").  For these reasons, the ALJ did not need to include the generalized term moderate limitation in concentration, persistence, and pace in his hypothetical to the VE.

Moreover, the ALJ accounted for Ms. Remien's mental deficiencies in the RFC assessment in finding Ms. Remien could handle only work demands that required low stress, low concentration, and low memory.  (Tr. 17.)  The ALJ defined low stress work as "low production level (where VE classified SGA jobs as low, average, or high production); no working with the general public; only occasional contact with supervisors and co-workers, but still having the ability to respond appropriately to supervision, co-workers and work situations; and the ability to deal with only occasional changes in a routine work setting."  (*Id*.)  The ALJ explained that working at no more than a low concentration level means "the ability to be alert and attentive to (and to adequately perform) only unskilled work tasks."  (*Id*.)  Unskilled work requires no more than "simple" tasks that require "little specific vocational preparation" and "can be learned on the job."  *See* 20 C.F.R. § 404.1568(a); SSR 83-10, 1983 WL 31251.  Unskilled work typically

requires working with objects instead of people (or information), and thus, communication "has the least significance" at this level.  *See* 20 C.F.R., pt. 404, subpt. P, app. 2 §§ 201.00(i), 202.00(g).  Typically, unskilled work does not require substantial concentration.  *See* SSA Program Operations Manual System (POMS) DI § 25020.010(B)(3)(d), 2001 WL 1933437 ("concentration is not critical").  The ALJ defined working at a low memory level as "the ability to understand, remember, and carry out 'simple' work instructions where 'simple' is defined as functioning at GED levels of Reasoning: 3, Math: 2, and Language: 2; the ability to remember and deal with only rare changes in work instructions from week to week; and, the ability to remember and use appropriate judgment in making only simple work-related decisions." (Tr. 17.)  All of these RFC limitations account for the issues that create the generalized moderate difficulties in concentration, persistence, and pace.  The Court will not second-guess the ALJ's conclusion.

Thus, the undersigned RECOMMENDS the District Court uphold the ALJ's RFC assessment because the ALJ followed the law in accounting for Ms. Remien's moderate limitations in concentration, persistence, and pace when determining her RFC.

### V. Evaluation of VE Testimony

Ms. Remien argues the VE erred in testifying Ms. Remien can perform the job of call-out operator because the ALJ's RFC indicated Ms. Remien could perform jobs with GED levels of reasoning three, math two, and language two, and the job of call-out operator has a language component of three.  (Pl.'s Opening Br. 16-17, ECF No. 17; *see also* tr. 283.)  Further, Ms. Remien argues that an insufficient number of jobs exist in the national economy, and the ALJ failed to analyze that number sufficiently.  (Pl.'s Opening Br. 17, ECF No. 17.)  The undersigned

finds the alleged error harmless because even eliminating the call-out operator jobs entirely, a

substantial number of jobs that Ms. Remien can perform in the national economy remain.

Call-out operator requires a language level of three, (D.O.T. #237.367-014, 1991 WL

672186), and the ALJ determined Ms. Remien had a language level of two, (tr. 283).  Given this

discrepancy, the undersigned eliminates the call-out operator job from consideration without

deciding whether its inclusion constitutes error.  The ALJ had already reduced the number of

call-out operator positions available to Ms. Remien by 90% to account, in part, for Ms. Remien's

limitations, leaving 5,100 call-out operator positions.  (Tr. 25.)  If the undersigned eliminates the

call-out operator positions entirely, the number of jobs Ms. Remien can perform in the national

economy would fall by only 5,100 positions – a relatively insignificant reduction – leaving

33,150 jobs available to Ms. Remien as a product assembler, laundry aide, or

housekeeper/cleaner.  (*Id*.)  The Court should decline to re-adjudicate errors that do not alter the

outcome if corrected because such errors constitute harmless error.  The Tenth Circuit has held

that "certain technical errors were 'minor enough not to undermine confidence in the

determination of the case.'"  *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (quoting

*Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993)).  Thus, the undersigned finds that

even eliminating the disputed position, sufficient jobs remain in society that Ms. Remien can

perform, making any error harmless.

Additionally, Ms. Remien argues the ALJ failed to consider the relevant criteria set forth

in *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1999), which requires the ALJ weigh the

disability level, the VE's reliability, the claimant's ability, the location and type of available jobs,

and other factors in determining whether jobs the plaintiff can perform exist in substantial

numbers in the national economy.  (Pl.'s Opening Br. 13, ECF No. 17.)  In *Trimiar*, the Tenth

Circuit held that 650 to 900 jobs within the state constituted a significant number.  *Trimiar*, 966 F.2d at 1330-31.  *Trimiar* only requires that the record reflect these factors entered the ALJ's calculus.  *Trimiar*, 966 F.2d at 1331-32.  Further, the court held that "'[the decision] should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation.'"  *Trimiar*, 966 F.2d at 1330 (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).  Review of the ALJ's decision reveals that he did consider at least the following relevant factors in determining that sufficient jobs existed in the national economy – the level of disability, (tr. 17-18), the reliability of the VE testimony, (tr. 25), the types of available jobs, (tr. 25), and Ms. Remien's commuting ability, (tr. 21).  Nothing in the record suggests a shortage of these jobs in the regional economy.

In reviewing the ALJ's decision and hearing transcript, the undersigned finds substantial evidence supports the ALJ's finding that 33,150 national jobs exist that Ms. Remien can perform, after removing call-out operator.

Thus, the undersigned RECOMMENDS the District Court find the ALJ conducted the appropriate analysis and substantial evidence supports the finding that a significant number of jobs exist in the national economy that Ms. Remien can perform.

### VI. Evaluation of Ms. Remien's Credibility and Activities of Daily Living

Ms. Remien argues the ALJ improperly evaluated her credibility by failing to consider Ms. Remien's persistent efforts to obtain relief.  (Pl.'s Opening Br. 15, ECF No. 17.)  The undersigned finds substantial evidence in the record supports the ALJ's finding that Ms. Remien's statements concerning her ADLs undermine her statements about the intensity, persistence, and limiting effects of her impairments.  Further, Ms. Remien argues the ALJ improperly considered her ADLs.  (Pl. Opening Br. 14-15, ECF No. 17.)  The undersigned

disagrees because the ALJ may consider plaintiff's ADLs as a factor in determining a plaintiff's ability to engage in substantial gainful activity.

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks and citation omitted). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (alteration in original) (citation omitted). If objective medical evidence shows a medical impairment that produces pain, the ALJ must consider the claimant's assertions of severe pain and decide the extent to which the ALJ believes the claimant's assertions. *Id.* But, this analysis "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Ms. Remien's argument that the ALJ failed to give her efforts to obtain pain medication enough weight in determining credibility, (Pl.'s Opening Br. 15, ECF No. 17), fails because the ALJ need not engage in a "formalistic, factor-by-factor recitation of the evidence."

The ALJ found some of Ms. Remien's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Ms. Remien's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Tr. 19.) The ALJ ultimately determined Ms. Remien's ADLs contradict the debilitating pain she alleges. (Tr. 21.) Courts frequently uphold the ALJ's reliance on ADLs as a basis to discount the claimant's reports of disability. *See, e.g., Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (upholding ALJ's determination that

plaintiff's ADLs contradicted her claims of disability); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (considering ADLs as record support for adverse credibility finding).  For example, Ms. Remien cares for herself and her family.  (Tr. 21, 236-38.)  Likewise, Ms. Remien receives $400/month to care for a seventeen-month-old child weekdays from 8:30 to 3:30.  (Tr. 21, 213-16 (caring for a five and three year old fulltime in 2011), 230, 299 (caring for two children in 2011).)  She can run errands without substantial difficulty, (tr. 21, 238), and she attends church and sporting events weekly and family functions monthly, (tr. 21, 239).  Additionally, the ALJ noted the contradiction in Ms. Remien's allegation that her vision impairment prohibits her from sustaining substantial gainful activity ("SGA") as Ms. Remien simultaneously has a driver's license, drives, and has done so for the last nineteen years.  (Tr. 21, 238.)  These facts provide substantial evidence to support the ALJ's credibility finding.

Ms. Remien further argues the ALJ improperly considered her activities of daily living.  (Pl.'s Opening Br. 14-15, ECF No. 17.)  Ms. Remien correctly asserts that "sporadic diversions and the ability to do some housework do not establish that a person is capable of engaging in substantial gainful activity.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)."  (*Id*. at 15.)  The ALJ can nonetheless determine that the claimant's activities of daily living support or belie the claimant's alleged impairments and how these limitations may factor into the claimant's ability to engage in substantial gainful activity.

Numerous courts in the Tenth Circuit have allowed the ALJ to consider plaintiff's activities of daily living in determining plaintiff's ability to perform basic work.  *See Newbold v. Colvin*, 718 F.3d 1257, 1264 (10th Cir. 2013) (affirming ALJ's decision to deny benefits due, in part, to plaintiff's ADLs); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (upholding

ALJ's use of plaintiff's description of plaintiff's daily activities to support the finding that plaintiff did not have significant limitations because she could "care for herself, her home and her children"; "drive, shop, and handle finances"; and garden, visit friends, and eat out). Additionally, the SSA has stated "the RFC assessment must be based on *all* relevant evidence in the case record, such as[] . . . [r]eports of daily activities . . . ."  SSR 96-8p, 1996 WL 374184, at *2.  Consequently, the ALJ did not err in considering Ms. Remien's activities of daily living in evaluating and evincing Ms. Remien's ability to engage in substantial gainful activity.

Thus, the undersigned RECOMMENDS the District Court find the ALJ followed the law in performing the credibility analysis and substantial evidence supports the ALJ's determination.

## VII. Evaluation of SSR 00-4p

Ms. Remien argues the ALJ violated SSR 00-4p when he failed to ask if the VE's testimony was consistent with the D.O.T.  (Pl.'s Opening Br. 13-14, ECF No. 17.)  The record demonstrates the ALJ used different language than used in SSR 00-4p when he asked the VE if the VE's testimony conflicted with the D.O.T., but the ALJ's inquiry had the same meaning.

SSR 00-4p states in pertinent part:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the D.O.T. When there is an apparent unresolved conflict between VE or VS evidence and the D.O.T., the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005) (holding before treating expert vocational evidence as substantial evidence in support of a determination, the ALJ must first ask the VE how his testimony regarding the exertion level of identified job(s) aligns with the D.O.T. (citing *Haddock v Apfel*,

196 F.3d 1084, 1087 (10th Cir. 1999)).  The ALJ cited SSR 00-4p in noting his determination

that the VE's testimony was consistent with the D.O.T. and where it was inconsistent, the

discrepancy was reasonable —"Therefore, the opinions of the expert are accepted and found to

be appropriate departures from the D.O.T."  (Tr. 25.)

The ALJ asked the VE, "And if we were to look at the D.O.T. and S.C.O. and other

descriptions of how these jobs are performed, would they mention all of my limitations, in

particular, the sit/stand option?"  (Tr. 74.)  The VE responded, "No, they would not."  (*Id*.)  The

ALJ then asked the VE, "Is that why you've reduced the number so much [referring to the eighty

percent reduction in laundry aide jobs and the ninety-five percent reduction in

housekeeper/cleaner jobs and product assembly jobs]."  (Tr. 71-74.)  This testimony accounts for

the discrepancy in all but the call-out operator position, which the undersigned disregards.  Even

if the ALJ's language had followed the case law verbatim, it would not change the VE's

response nor would it change the ALJ's ultimate determination that Ms. Remien does not qualify

as disabled.

Thus, the undersigned RECOMMENDS the District Court uphold the ALJ's

determination as complying with SSR 00-4p.

## VIII. RECOMMENDATION

For the reasons set forth above, the undersigned RECOMMENDS the District Court

affirm the Commissioner's decision.  The Court will send copies of this Report and

Recommendation to all parties who are hereby notified of their right to object.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(2).  The parties must file any objection to this Report and

Recommendation within fourteen (14) days of service thereof.  *Id*.  Failure to object may

constitute waiver of objections upon subsequent review.

DATED this _10th__ day of September 2015.


BY THE COURT:


EVELYN J. FURSE
United States Magistrate Judge