UNITED STATES DISTRICT COURT
DISTRICT OF UTAH- CENTRAL DIVISION

| | |
|---|---|
| EVANGELINE REMIEN,<br><br>Plaintiff,<br><br>        v.<br><br>CAROLYN COLVIN,<br><br>Defendant. | **ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 2:14-cv-00539-RJS-EJF<br><br>Judge Robert J. Shelby<br><br>Magistrate Evelyn J. Furse |

Plaintiff Evangeline Remien filed this action seeking reversal or remand of a final agency decision denying her Disability Insurance Benefits (DIB) under Title II and Supplemental Social Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.[1]  After conducting a hearing, the Administrative Law Judge (ALJ) determined that Remien was not disabled under sections 216(i) and 223(d) of the Social Security Act.  Remien appealed the ALJ's decision to the agency's Appeals Council, providing the Council with new medical records and an intellectual evaluation.  The Council denied her request for review. Remien then filed this case, appealing the Commissioner of Social Security's final decision.

The court referred this case to Magistrate Judge Evelyn J. Furse pursuant to 28 U.S.C. § 636(b)(1)(B).[2]  Judge Furse issued a Report and Recommendation advising this court to affirm the final decision denying benefits to Remien.[3]  Remien filed a timely Objection[4] to Judge

---

[1] Dkt. 3, Complaint.

[2] Dkt. 16.

[3] Dkt. 26.

[4] Dkt. 27.

Furse's Recommendation, and Defendant Carolyn Colvin, Acting Commissioner of Social Security, filed a Reply.[5]

The court has conducted a de novo review[6] of the several issues Remien raises in her Objection.  As Judge Furse did in her Report and Recommendation, this court reviews the Commissioner's decision to determine whether the proper legal standards were applied and if the record as a whole contains substantial evidence in support of the Commissioner's factual findings—evidence "a reasonable mind might accept as adequate to support a conclusion."[7] Having carefully considered the parties' briefing, the applicable law, the evidentiary record, and the reasoning in Judge Furse's Report and Recommendation, the court OVERRULES Remien's Objection, ADOPTS Judge Furse's Recommendation, and AFFIRMS the denial of benefits.

## ANALYSIS

The parties do not take issue with the Procedural History, Factual Background, and Standard of Review portions of Judge Furse's Report and Recommendation,[8] and the court finds Judge Furse has correctly stated therein case history, facts, and applicable legal standards.  The court adopts these portions of Judge Furse's Report and Recommendation, and confines its discussion below to the arguments Remien makes in her Objection, concluding they are without merit.

**I.      New Evidence Submitted to the Appeals Council**

Remien's first argument concerns new evidence she submitted to the Appeals Council— psychological testing she underwent at her own expense and "evidence of [her] eye

---

[5] Dkt. 28.

[6] *See* 28 U.S.C. § 636(b)(1)(C) (requiring de novo review of portions of a report and recommendation to which timely objections are made).

[7] *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2014) (citations omitted).

[8] Dkt. 26 at 2-7.

impairment."[9]  In her briefing before Judge Furse, she argued that the Commissioner's findings

cannot be supported by substantial evidence because the Council too perfunctorily adhered to the

ALJ decision in stating:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.[10]

Judge Furse correctly recommended that the court reject Remien's argument on this issue

because the Council's consideration of both the psychological testing and the vision impairment

evidence was adequate under the Tenth Circuit's decision in *Martinez v. Barnhar*t.[11]  Under

*Martinez*, the Council need only state—as it did—that it considered "the additional evidence

identified in the attached Order" to have "adequately 'considered . . . the additional evidence,'

meaning that it 'evaluate[d] the entire record including the new and material evidence

submitted.'"[12]

And, concerning the substance of the psychological testing evidence, Judge Furse

correctly stated that it "does not undercut[] the ALJ's RFC evaluation."[13] Remien's psychological

testing scores were mixed.  Some were average and some were below average, including her

verbal comprehension score of 74.  The testing results indicated that Remien "may struggle to

comprehend most of what is said in the workplace or training environment, especially if she is

---

[9] Dkt. 27 at 1-2.

[10] Tr. 12; Dkt. 17 at 8.

[11] 444 F.3d 1201, 1207 (10th Cir. 2006).

[12] *Id.* (quoting 20 C.F.R. § 404.970(b)); *see also* Dkt. 26 at 11.

[13] Dkt. 26 at 11.

not given time to process the information short to long-term memory."[14]  But as Judge Furse correctly noted, the RFC already limited Remien to "work at a low stress level, low concentration level, and low memory level."[15]

Remien argues in her Objection that Judge Furse's Recommendation on this issue is infirm because some of the new evidence she submitted to the Council is not reviewed in detail. Citing generally to *Martinez*, Remien contends that "the reviewing court is required to decide whether the new evidence undercuts the ALJ's findings" but Judge Furse did not address the argument that the testing contradicts the RFC on the issue of auditory memory limitations, particularly where one job—"call-out operator"— requires verbal abilities.  And, she faults Judge Furse for not addressing "new evidence of [her right] eye impairment show[ing] . . . [degradation] from 20/50 . . .  to 20/80", and where the "VE provided substantial reductions in . . . large part due to the vision limitations", further degradation could lead to further reductions.[16]

The court finds Remien's arguments unpersuasive.  First, the Council adequately reviewed and rejected the new evidence.  Second, Judge Furse considered the psychological testing and disagreed that it undercut the RFC.  Third, any alleged failure to discuss in great detail the auditory memory limitations as they relate to the call-out operator job is immaterial and harmless, where, as the Commissioner notes, the "outcome of this case would not change" because "33,150 [laundry aide, housekeeper, and product assembler] jobs . . .  exist that [Remien] can perform, not considering the reduced number of call-out operator jobs."[17]

---

[14] Tr. 469-70.

[15] *Id.*; Tr. 17.

[16] Dkt. 27 at 2.

[17] Dkt. 28 at 2.

And the court cannot conclude that Remien's fleeting argument concerning vision degradation to 20/80 requires remand. The ALJ considered medical records stating that Remien had lost her left eye and that her visual acuity in her right eye without correction was as low as 20/70, but could improve to between 20/40 and 20/50 with correction.[18] The RFC accounted for Remien's already notable vision issues—precluding, for example, "[w]orking around dangerous unprotected heights, machinery or chemicals due to visual loss;" and work requiring "binocular vision due to left eye blindness and reduced vision in the right eye;" or "reading, writing, computer screen work or similar fine vision tasks . . . ."[19] The VE testified concerning a deduction in jobs due to vision and other limitations.[20] Remien does not identify any job suggested in the ALJ's decision that she cannot do due to further vision degradation. Remien fails to persuade this court that the new right eye evidence undercuts the ALJ's decision-making. Her Objection on this issue is OVERRULED.

## II. ALJ's Consideration of all Impairments and Obesity Analysis

Remien argues that the ALJ failed to consider her obesity in the presence of her knee arthritis and plantar fasciitis. Remien argued before Judge Furse that the "ALJ did not acknowledge [her] obesity, . . . [and] did not engage in the 02-01p analysis"[21] Judge Furse rejected this argument, finding that the "ALJ adequately acknowledged [Remien's] obesity in his decision and its separate and combined impact on her RFC."[22] The court finds that Judge Furse's

---

[18] Tr. 19.

[19] Tr. 17-18.

[20] Tr. 74.

[21] Dkt. 17 at 10.

[22] Dkt. 26 at 12.

discussion of this issue is correct, and adopts it in its entirety.  Remien's Objection on this issue[23] essentially restates the arguments she made before Judge Furse, and it is OVERRULED.

## III.    ALJ's Consideration of 12.05 Equivalence

Remien argues that she meets or equals Section 12.05, but the ALJ improperly failed to order a requested consultative examination and thus necessarily failed to evaluate her claimed borderline intellectual functioning.[24]  Judge Furse rejected this argument, concluding that substantial record evidence supported the ALJ's finding that she does not "meet or medically equal" a listing equivalence.[25]  The court finds Remien's argument was properly rejected for the reasons set forth in Judge Furse's thorough analysis, and adds that it agrees with the Commissioner's contention that Remien reasonably was not sent for a CE because at the time the ALJ made that decision, substantial evidence supported the conclusion that her intellectual functioning did not require it.[26]  Remien's Objection to Judge Furse's Report and Recommendation on this issue is OVERRULED.

## IV.    ALJ's Hypothetical and Concentration, Persistence, or Pace

The ALJ found that "[w]ith regard to concentration, persistence or pace" Remien had "moderate difficulties."[27]  Here, the ALJ discussed Remien's claimed difficulties with "concentration and memory," and stated that he "allowed for moderate limitations in concentration, persistence or pace in the [RFC]."[28]  The ALJ accounted for these deficiencies in

---

[23] Dkt. 27 at 2-3.

[24] Dkts. 17 at 11 and 27 at 4.

[25] Dkt. 26 at 16.

[26] *See* Dkt. 21 at 12.

[27] Tr. 16.

[28] *Id.*

the RFC assessment, finding that Remien could only do work requiring low stress, low concentration, and low memory.[29]

Remien argued before Judge Furse that her limitations were erroneously not included in the hypothetical to the VE.  Judge Furse correctly rejected this argument, first explaining that under guidance from the Tenth Circuit, an ALJ need not include limitation findings at steps two and three in the RFC assessment.  But as Judge Furse found, Remien's mental deficiencies were appropriately accounted for in the RFC assessment in which the ALJ found Remien could only handle work requiring low stress, low concentration, and low memory—the same specific issues the ALJ discussed under the area of "concentration, persistence or pace."[30]  The court finds that Judge Furse's thorough discussion of this issue is correct, and adopts it in its entirety.  Remien's Objection to Judge Furse's Report and Recommendation on this issue is OVERRULED.

## V.     The VE Testimony and Number of Jobs

Remien argued before Judge Furse that the VE erred in testifying that she could perform the job of call-out operator, which requires a language component of three, because Remien only enjoys a language component of two.  Judge Furse's Report and Recommendation renders this issue moot, where she eliminated that job from consideration in her analysis.[31]  Judge Furse further concluded that assuming the consideration of the call-out operator job was error, the error was harmless where even after excluding that job from consideration there remained a sufficient

---

[29] Tr. 17-18.

[30] In her Objection, Remien argues nonetheless that the ALJ did not sufficiently account for her mental deficiencies in the RFC because he did not specifically use the terms "persistence" and "pace", and that while recommended work may be unskilled, it might "still be fast paced, such as a production line."  Dkt. 27 at 5.  The court finds this unpersuasive in view of Judge Furse's detailed analysis.  Further, the RFC's limitation to work at a low stress level meant work at "a low production level."  Tr. 17.  And, the RFC accounted for Remien's concentration and memory issues.  Those are the issues that had been identified when the ALJ evaluated the category of "concentration, persistence, or pace."  Tr. 16.  (noting that "With regard to concentration, persistence, or pace, the claimant has moderate difficulties.  She alleges difficulty with her concentration and memory.").

[31] Dkt. 26 at 19.

number of jobs in the national economy (33,150) Remien could perform—as a product assembler (4,750 jobs), laundry aide (8,400 jobs), or housekeeper/cleaner (20,000 jobs).[32]

Remien objects to this conclusion on multiple grounds. The court finds none persuasive. First, she observes that Judge Furse failed to "provide judicial support for grouping jobs together."[33] Here, Remien apparently takes issue with Judge Furse's adding the three categories of jobs she can do to reach the total of 33,150. In making this passing statement, Remien offers the court no authority upon which to conclude Judge Furse's grouping is improper, such as a citation to a case, regulation, or other legal authority. Nor does she attempt to make such an argument based on the specific circumstances of the case. The court thus rejects Remien's argument on this issue—particularly where she offers no reason why it is improper in this specific case, and it appears that such grouping is something contemplated under both the applicable regulations[34] and guidance from the Tenth Circuit.[35]

Next, Remien argues that Judge Furse "appears to concede that the ALJ did not provide the full analysis required under *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1999)." The court finds this argument unpersuasive. At the outset, it appears mistaken. Judge Furse stated in her Report and Recommendation that *Trimiar* required the ALJ to use common sense in weighing "statutory language as applied to a particular claimant's situation," and that the ALJ

---

[32] *Id.*; *see also* Tr. 25.

[33] Dkt. 27 at 6.

[34] *See* 20 C.F.R. § 404.1566(b), *Work which exists in the national economy* ("[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet. . . [i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy. . . .'").

[35] *See Stokes v. Astrue*, 247 Fed.Appx. 675, 684 (10th Cir. 2008) (noting that even if the court considered on a combined basis only "two jobs [electronic assembler and clerical mailer] out of the four considered by the ALJ . . . we do not believe any reasonable factfinder could have determine that suitable jobs did not exist in significant numbers in either the region . . . or several regions of the country.").

considered the "relevant [*Trimiar*] factors"—none of which "suggest a shortage of . . . jobs in the regional economy."[36]  Judge Furse correctly concluded that substantial evidence supports the finding that 33,150 jobs exist in the national economy that Remien can perform.  Remien's Objection on this issue is OVERRULED.

## VI.   ALJ's Compliance with SSR 00-04p

Remien argued before Judge Furse that the ALJ breached SSR 00-4p by failing to ask the VE how his testimony corresponded with the Dictionary of Occupational Titles and obtain an explanation for any inconsistencies.[37]  She argues that because her level two reasoning suggests she could not do one of the three jobs the VE identified, that of call operator (requiring level three reasoning), the VE's testimony was not consistent with the DOT on that point.[38]

SSR 00-04p provides:

Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully

---

[36] Dkt. 26 at 20.  Further, though Judge Furse concluded the *Trimiar* analysis was sufficient, the Commissioner argues that a *Trimiar* factor analysis is not required at all in this case, which concerns a large number of jobs in the national economy, as opposed to that case's small number of jobs in a region.  Dkt. 28 at 7 (citing *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009)).  *Raymond* appears to support the Commissioner's position.  The court of appeals there rejected the claimant's argument that a multi-factor analysis was required in a case where 1.34 million jobs existed in the national economy that the claimant could do.  621 F.3d at 1274.  The court explained:

In *Trimiar* the focus was on jobs in the regional economy because the vocational expert in that case testified only to the number of available jobs in the regional economy.  Because the number of such jobs was between 650 and 900, and because this circuit has "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,' " the court turned to the multi-factor analysis to help it resolve the question whether 650 to 900 jobs is a "significant" number.  *Trimiar* does not hold that only regional jobs are relevant or that a court must engage in a factoral analysis when the number of jobs relevant available is, as here (1.34 million), much larger.

*Id.* at 1274, n.2.

[37] Dkt. 17 at 13.

[38] Dkt. 24 at 7-8.

develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

At the hearing, the ALJ had the following exchange with the VE:

Q. And if we were to look at the DOT and SCO and other descriptions of how these jobs are performed, would they mention all of my limitations, in particular, the sit/stand option?

A. No, they would not.

Q. Is that why you've reduced the number so much?

A. The main reason for that reduction is the vision issues and the environmental issues, in addition to the sit/stand.  So yes, all three of those.

Q. And the basis for your reduction?

A. That's my experience as a rehab counselor in understanding the carried environments by which these types of jobs exist.[39]

In his decision, the ALJ cited SSR 00-4p, and stated that the VE had been asked at the hearing if her testimony conflicted with the DOT.  The ALJ notes that the VE had "responded by stating that the DOT does not mention, in its description of the . . . [identified jobs of product assembler, laundry aide, housekeeper/cleaner, and call out operator], the limitations given (e.g. the sit/stand option and the mental limitations) in the residual functional capacity.  However, the expert stated that her education and experience indicates that such jobs do allow for such limitations, in the reduced numbers noted . . . . No contrary evidence was presented.  Therefore, the opinions of the expert are accepted and found to be appropriate departures from the DOT."[40]

Judge Furse correctly recommended that this court find reversal on this ground is unwarranted, where the ALJ's questions to the VE had essentially the same meaning as the language in SSR 00-004p and the ALJ specifically asked about limitations not present in the

---

[39] Tr. 74-75.

[40] Tr. 25.

DOT and the reductions in the available job numbers—accounting for relevant discrepancies in all but the call-out operator job, which is disregarded in the court's analysis.  As Judge Furse correctly noted, even if the ALJ's language had more carefully tracked SSR 00-04p's, "it would not change the VE response, nor would it change the ALJ's ultimate determination that Ms. Remien does not qualify as disabled."[41]

In her Objection on this issue, Remien cites to the cases *Madron v. Astrue*[42] and *Poppa v. Astrue.*[43]  But the court cannot conclude that either of those cases—or *Hackett v. Barhart*, a case Judge Furse cites in her Report and Recommendation—require reversal even if the ALJ did not strictly comply with the language in SSR 00-4p.

The Tenth Circuit in *Madron* found the ALJ erred in finding at step four that the claimant could return to her prior work as in a cashier II job, and was thus not disabled.   ALJ had relied on VE testimony that the claimant could return to the cashier II job.  That job required a reading level of two, but the ALJ had specifically found the claimant had a reading level of only one. The court of appeals found error in the ALJ's failure to seek "any explanation for this apparent contradiction."[44]  The court noted that the cashier II job was the claimant's "only possibility" to return to her prior work, and concluded that even if they were able to uphold the ALJ's RFC

---

[41] Dkt. 26 at 24.

[42] 311 Fed.Appx. 170 (10th Cir. 2009).  Remien cites page 175 of that decision for the proposition that the ALJ must obtain a "reasonable explanation" for any inconsistencies.  Dkt. 27 at 7.  The only discussion of that term in the *Madron* case is found at 181, in the court's discussion of "Available Jobs," and this is the discussion the court believes Remien meant to rely upon.

[43] 569 F.3d 1167 (10th Cir. 2009).  Remien cites page 1171 of that decision.  The discussion of SSR 00-4p begins at page 1173, and this is the discussion the court believes Remien meant to rely upon.

[44] 311 Fed.Appx. at 181.

(which they did not), they would therefore be required to reverse the determination that the claimant was not disabled.[45]

The *Madron* court further found that the ALJ had made a similar mistake at step five. The VE had identified two jobs that the claimant allegedly could do—inspector/hand packager and small products assembler.  But the former required a reading level of two.  And, the VE again failed to explain—apparently was not asked—how the claimant could be expected to do the inspector/hand packager job.  The court of appeals noted that this "deficiency severely undercuts the ALJ's conclusion that [the claimant] is not disabled."[46]

In *Poppa*, the Tenth Circuit agreed with the claimant that the ALJ breached SSR 00-4p and "erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT."[47]  But the court concluded that "this error was harmless because there were no conflicts."[48]

In *Hackett*, the Tenth Circuit considered, among other issues, the ALJ's apparently mistaken statement in his decision that the VE had acknowledged and explained a conflict between his opinions and the DOT.  The claimant argued, and the district court agreed, that this had not actually occurred.  The district court ruled that such an explanation was unnecessary because there was no conflict between the VE's testimony and the DOT, rejecting the claimant's argument that: 1) the VE's two identified jobs were not available to her because her RFC limited her to jobs avoiding significant interaction with people, and 2) both the jobs identified required a reasoning level of three, but her RFC was inconsistent with such a requirement.  The court of

---

[45] *Id.*

[46] *Id.* at 182.

[47] 569 F.3d at 1173.

[48] *Id.*

12

appeals agreed there was no conflict between the RFC and the interaction with people function, and thus appeared to agree with the district court that an "explanation was unnecessary."[49] However, the court of appeals disagreed with the district court on the second point, where that the claimant appeared to have level two reasoning and thus would ultimately be unable to do either job identified the VE identified.  Thus, the court concluded that reversal and remand of "this portion of the ALJ's decision" was necessary "to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."[50]

This court discerns from the cases Remien and Judge Furse cited that where the error is harmless, a technical failure to use the precise language of SSR 00-4p does not mandate reversal. In *Madron,* the ALJ's failure led to an erroneous determination that the claimant could return to one job, which, in reality, she could not do.  And in *Hackett*, the failure led the ALJ to erroneously find the claimant could do two jobs when in reality she could do neither.  The court reversed in those cases.  In *Poppa,* where the error was harmless, there was no reversal.

Any error here in the ALJ's imprecise discussion with the VE was harmless, and accounted for discrepancies in his decision.  The job for which Remien argues there was a conflict—call-out operator—has not been considered by this court, nor was it considered by Judge Furse in making her Report and Recommendation.  The ALJ relied on other substantial

---

[49] *Id.* at 1175-76.  The court explained that "The district court nevertheless ruled that the ALJ's assertion about the VE's explanation was unnecessary because there was not conflict between the VE's testimony and the DOT.  We agree with respect to the 'people' function of the designated jobs, but disagree with respect to the required reasoning level." *Id.*

[50] *Id.* at 1176.

evidence in reaching its decision.  Reversal is unwarranted, and Remien's Objection on this issue is OVERRULED.[51]

## VII.    Credibility and Activities of Daily Living

Remien argued before Judge Furse that the ALJ failed to explain adequately how her activities of daily living are inconsistent with her allegations of sedentary limitations,[52] and that the ALJ failed to consider that her efforts to obtain pain relief enhanced her credibility.[53]  The court concludes that Judge Furse properly rejected these arguments.  First, Judge Furse correctly noted that credibility arguments are not to be disturbed when supported by substantial evidence, and that while an ALJ must consider a claimant's assertions regarding pain where medical evidence shows a pain-producing impairment, a formal "factor-by-factor recitation of the evidence" is not required.[54]  Judge Furse then reviewed the ALJ's decision and specifically cited to portions where the ALJ considered Remien's pain claims and ADL's, and correctly concluded under the applicable law that the ALJ did not err in considering "Remien's activities of daily living in evaluating and evincing [her] ability to engage in substantial gainful activity."[55] Remien's Objection on this issue is OVERRULED.

---

[51] *See also Fulton v. Colvin*, 631 Fed.Appx. 498, 507 (10th Cir. 2015) (finding step five burden satisfied and declining to reverse although the ALJ undisputedly "failed to inquire of the VE as to any possible conflict between the DOT and the VE's testimony, or otherwise resolve the conflict, as required by Social Security Ruling 00-4p" where only one of the two jobs considered had a resonating level inconsistent with the claimant's RFC; noting that the "other job the ALJ relied on . . . satisfies the Commissioner's step-five burden.").

[52] Dkt. 17 at 14-15 (noting that even if Remien can care for children and do some household activities, this does not establish that she can engage in substantial gainful activity).

[53] Dkts. 17 at 15.

[54] Dkt. 26 at 21 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000 (citing *Kepler v. Chater*, 68F.3d 387, 391 (10th Cir. 1995)).

[55] Dkt. 26 at 23.

## CONCLUSION

For the reasons stated, the court concludes that Judge Furse's Report and Recommendation correctly states and applies the law and is supported by the record, the court ADOPTS the Report and Recommendation in its entirety.  Remien's Objection is OVERRULED, and the Commissioner's decision is AFFIRMED.  The Clerk of Court is directed to close this case.

SO ORDERED this 29<u>th</u> day of <u>March</u>, 2017.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

15